UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ROLANDO PENA QUESADA,

        Petitioner,

      v.

                                Case No. 2:26-cv-1728-KCD-NPM

WARDEN, FLORIDA SOFT SIDE
SOUTH DETENTION CENTER,
US ATTORNEY GENERAL,

        Respondents.

_____/

## ORDER

Petitioner Roland Pena Quesada has filed a habeas corpus petition challenging his detention by U.S. Immigration & Customs Enforcement ("ICE"). (Doc. 1.)[1] He claims that his continued imprisonment violates the Fifth Amendment as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2001). Respondents oppose the petition. (Doc. 7.) For the reasons below, the petition is **GRANTED**.

## I. Background

Quesada is a native of Cuba who entered the United States in 2007. He was later convicted of fraudulent use of a credit card and sentenced to prison. Removal proceedings were started, and in 2011, an immigration judge

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

ordered him removed. When that removal did not come to fruition, Quesada was placed on an order of supervision. On November 30, 2025, Quesada attended a routine ICE check-in appointment, was detained, and his supervision was revoked.

This is not Quesada's first crack at release. Back in March, the Court denied his initial habeas petition because the six-month presumptively reasonable detention period under *Zadvydas* had not yet run. *See Quesada v. Warden*, No. 2:26-cv-505-KCD-DNF, 2026 WL 776141 (M.D. Fla. Mar. 19, 2026). The Court noted that Quesada had twice refused removal to Mexico based on a declaration provided by Deportation Officer Steven Rosario. The Court did not rely on the declaration, though, because the habeas petition was not yet ripe.

In this second petition, Quesada disputes that he refused removal. (Doc. 1 at 25.)[2] In response, the Government stands on Rosario's declaration, as counsel was unable to obtain any updated information from ICE. (Doc. 7 at 3 n.2.)

## II. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of

---

[2] For the petition, the Court uses the page numbering generated by its electronic filing system.

the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

### III. Discussion

The statutory framework for removal works like this: when a noncitizen's removal order becomes final, like here, the government has 90 days to effectuate removal. 8 U.S.C. § 1231(a)(1)(A). During that period, detention is mandatory. *Id.* § 1231(a)(2)(A). If the 90 days pass and the noncitizen is still here, the statute gives the government a choice: release the individual on supervision or keep them detained. *Id.* § 1231(a)(6).

But as the Supreme Court explained in *Zadvydas v. Davis*, the authority to detain does not stretch into infinity. To avoid serious constitutional problems, the Court read an implicit limitation into the statute: the government may detain a noncitizen only for a period "reasonably necessary" to secure his removal. 533 U.S. 678, 699 (2001). And to make that rule workable, the Court established a presumption. For the first six months, detention is presumptively reasonable. *Id.* at 701. After that

3

period has passed and the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden shifts to the government to provide evidence sufficient to rebut that showing. *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Thus, "in order to state a claim under *Zadvydas*, the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*.

Applied here, Quesada satisfies the initial temporal requirement. ICE took him into custody over six months ago. Because the period for presumptively reasonable detention has expired, *Zadvydas*'s burden-shifting framework applies. Quesada has carried his initial burden by showing a good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. He states that he has received no indication that ICE will remove him, as they have provided no travel document or a confirmed removal date. (Doc. 1 at 25.) Coupled with his Cuban citizenship and prior failed attempts at removal, those facts are enough.

The burden thus shifts to the Government to rebut Quesada's showing, but they fail to do so. *Akinwale*, 287 F.3d at 1052. This outcome should come as no surprise—the record offers no documents, no diplomatic agreements, and no concrete evidence that Quesada will be removed in the near future.

4

(Doc. 7.) Instead, the Government stands on a declaration from Rosario dated back in March, stating that Quesada refused removal to Mexico. But Quesada now disputes Rosario's assertions, and the Government, despite an opportunity to do so, does nothing to respond. Because ICE offers no concrete evidence that removal is likely in the near future or has been impeded, Quesada must be released.

It is easy to see why this outcome might cause unease. Quesada is a convicted felon. Yet, because the Government is completely unable to effectuate his removal, he has been allowed to live in this country for nearly twenty years without facing the ultimate immigration consequence. But this Court is bound by the law. And the law is clear: the Government cannot lock individuals in a cell indefinitely as a workaround for a stalled deportation process, nor can it use indefinite detention simply to placate popular opinion. *Zadvydas*, 533 U.S. at 659. The Constitution cannot be ignored just because the facts are frustrating. If there is a flaw in a system that leaves convicted criminals in a state of perpetual immigration limbo, the remedy lies in the halls of Congress or with the Executive branch—not with a federal judge.

### III. Conclusion

Because the Government cannot show any real prospect of deportation, the Court finds no significant likelihood that Quesada will be removed in the reasonably foreseeable future. He is therefore entitled to release from ICE

custody under *Zadvydas*. But that release is not a free pass—he remains subject to the strict conditions of his order of supervision. To the extent Quesada's pro se petition raised any other claims, they are denied. He is entitled to no other relief from the facts presented.

Accordingly, it is **ORDERED:**

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED** as set forth above.

2. Respondents are ordered to **RELEASE** Petitioner Roland Pena Quesada from custody within 48 hours of this Order under the prior conditions of supervision, which Petitioner must continue to comply with.

3. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close this case.

**ORDERED** in Fort Myers, Florida on June 3, 2026.

Kyle C. Dudek
United States District Judge

6